UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

**Eastern District of Kentucky**
**FILED**

JAN 3 1 2007

AT LONDON
**LESLIE G. WHITMER**
**CLERK U.S. DISTRICT COURT**

CIVIL ACTION NO. 06-120-GWU

TERRY PETO,                                                          PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                   DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Supplemental Security Income (SSI) and Disability

Insurance Benefits (DIB). It is currently before the Court on cross-motions for

summary judgment; a portion of the plaintiff's brief could also be construed as a

motion to remand under sentence six of 42 U.S.C. Section 405(g).

### LAW APPLICABLE TO SUMMARY JUDGMENT MOTIONS

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or

1

Peto

     mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  See 20 CFR 404.1520©), 404,1521, 416.920©), 461.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 CFR 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

    Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Peto

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

3

Peto

established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Peto

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all

5

Peto

these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

6

Peto

## STANDARDS APPLICABLE TO MOTIONS TO REMAND

In assessing that portion of the plaintiff's brief which could be interpreted as a separate motion to remand, it must be noted the pertinent federal statute provides that:

> The Court may . . . at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .

42 U.S.C. Section 405(g) (emphasis added).

While "good cause" for failure to incorporate such evidence might be established when the additional records were not compiled until after the administrative hearing, Oliver v. Secretary of Health and Human Services, 804 F.2d 964, 966 (6th Cir. 1986), the fact that the plaintiff did not seek to have the record remain open to be able to submit evidence mitigates against such a finding, Willis v. Secretary of Health and Human Services, 727 F.2d 551, 554 (6th Cir. 1984).

To be "material", the documents must be "both relevant and probative", "bearing directly and substantially on the matter in dispute", or "likely to have produced a different administrative result". Huffler v. Heckler, 59 F. Supp. 626, 627 (S.D. Ohio 1984). In order to satisfy this materiality criterion, the claimant must demonstrate that there is a reasonable probability that the Administrative Law Judge (ALJ) would have reached a different conclusion if presented with the new evidence. Sizemore v. Secretary of Health and Human Services, 865 F.2d 709, 711 (6th Cir. 1988). In determining whether to remand a case, the Sixth Circuit Court of Appeals

7

has distinguished between new evidence of the claimant's condition at the time of the administrative hearing and evidence of a subsequent deterioration or change in his condition. The former is deemed material; the later is not. See Sizemore, 865 F.2d at 712.

## DISCUSSION

The plaintiff, Terry Peto, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a recurrent, moderate major depressive disorder, moderate generalized anxiety disorder, moderate panic disorder without agoraphobia, and a history of alcohol abuse in early remission. (Tr. 20). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Peto retained the residual functional capacity to perform a significant number of jobs existing in the economy and. therefore, was not entitled to benefits. (Tr. 24-5). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 44 years, high school equivalent education, and work experience in the sheet metal industry, loading and unloading trucks, and in valet parking, could perform any jobs if he were capable of a full range of work at all exertional levels that required no more than simple tasks and involved only routine changes. (Tr. 648). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 649).

8

Peto

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Mr. Peto had filed prior applications for DIB and SSI in January, 2002, which were denied in a decision by another ALJ on September 19, 2003. (Tr. 37-48). The ALJ in the present case declined to reopen the prior applications, finding the new evidence submitted did not warrant a departure from the residual functional capacity found in the September, 2003 ALJ decision, and he did not discuss any medical evidence dated before September, 2003. (Tr. 16, 18-20). The ALJ noted that he was bound by the prior ALJ's determination of residual functional capacity for subsequent, unadjudicated periods, unless there was new and material evidence of a showing of changed circumstances. Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997).

At the administrative hearing, Mr. Peto alleged that he was disabled because of carpal tunnel syndrome in both hands, which left his hands and wrists weak and painful, and caused him to use two hands to lift a gallon of milk. (Tr. 632-3, 635). He wore wrist splints at home. He also had an old injury to his right knee which made it weak and painful and caused it to give out. (Tr. 632-3, 640). Another problem was right leg numbness and low back pain, but he was unable to afford an MRI recommended by physicians. (Tr. 635). Mr. Peto described having frequent panic attacks and avoiding the public by staying in his room most of the time. (Tr. 636). He stated he had no friends and did not leave his house except for doctors appointments, and did not like people. (Tr. 639). He had been treated for

9

Peto

approximately three years at the Comprehensive Care Center (CCC), and had been hospitalized for a week in 2004 because he wanted to hurt himself. (Tr. 643-4). His medications, which included Lexapro and Seroquel, made him groggy. (Tr. 645).

The ALJ noted that treatment notes from CCC included a functional assessment from September, 2003 indicating that Mr. Peto had "slightly low" societal/role functioning, interpersonal functioning, and daily living/personal care functioning, but that his physical functioning and cognitive/intellectual functioning were "slightly high." (Tr. 408). This assessment was signed by Steve Broughton, a counselor. Mr. Broughton also wrote a letter dated February 19, 2004 stating that Mr. Peto had attended therapy since October 19, 2001, and was being treated for depression. (Tr. 383). He displayed impaired energy, cognition, and poor socialization, and had interpersonal difficulties with family and friends; he was considered a high-risk toward suicidal ideation, had had numerous hospitalizations, and was "unable to function in a work setting." (Id.). However, Mr. Broughton was not an acceptable medical source under 20 C.F.R. Section 404.1513, and the ALJ was not required to give his opinion deference. His treating psychiatrist at the facility, Dr. S. Raza, noted that Mr. Peto was having difficulty obtaining medications, but advised him to apply to free programs and consistently indicated that he was not suicidal or homicidal and was able to take care of himself. (Tr. 386). Although the plaintiff continued to report nervousness and panic symptoms in June, 2004, Dr. Raza increased his dose of Zoloft and noted that the plaintiff was still not psychotic, suicidal, or homicidal. (Tr. 376). In August, 2004 the plaintiff was hospitalized,

10

Peto

however, stating that he was suicidal, but the CCC clinician's note of the incident indicated that the patient became belligerent almost immediately and demanded to be released. (Tr. 516). Subsequent treatment notes from Dr. Raza reflected that the plaintiff had apparently obtained a source of supply for medication, and continued to complain of bad nerves and poor sleep, as well as feelings of anger, but had no suicidal thoughts and no thoughts of hurting others. (Tr. 581-5). His thought processes were logical, he had no hallucinations, his eye contact was good, he was alert and oriented, and his insight and judgment were "fair." (Tr. 581). No specific functional restrictions were suggested by Dr. Raza.

There were two consultative psychological evaluations.

Phil Pack, M.S., examined Mr. Peto in February, 2004, and reviewed some previous records, including a CCC treatment plan from January, 2002 which included diagnoses of alcohol dependence, alcohol induced mood disorder, cannabis abuse, and "rule out" cyclothymic disorder, dysthymia, and antisocial personality disorder. (Tr. 452). The most recent clinical note available to Mr. Pack was dated September 8, 2003, and continued to report that the plaintiff's mental status was being influenced by alcohol use. (Tr. 453).[1] The plaintiff, however, minimized the substance abuse problems to Mr. Pack and described a history of psychiatric hospitalizations and ongoing complaints of depression despite treatment. (Id.). Mr. Peto stated that he had last worked three years earlier when his father had died, and he "took it hard."

---

[1]Substance abuse is no longer a basis for an award of benefits as per Publ. L. No. 104-121.

11

Peto

(Id.).  He had been psychiatrically hospitalized four times since; he denied the drinking was a problem, but admitted that he had some arrests for alcoholic intoxication, most recently one year earlier.  (Tr. 454).  He lived with his mother and her husband, and allowed her to keep track of his money and bills, but took care of his own personal needs.  Intelligence testing showed a full-scale IQ of 87, and high school level reading.  (Tr. 455-6).  Mr. Pack diagnosed a depressive disorder and "rule out" polysubstance dependence, and concluded that Mr. Peto would have a "more than satisfactory" ability to understand, retain, and follow instructions, sustain attention to perform repetitive tasks, relate to others, including fellow workers and supervisors, and adapt to the stress and pressures of day-to-day work activity.  (Tr. 457).

Conversely, Robert Spangler, a licensed psychologist, examined Mr. Peto in October, 2004 and, while obtaining similar IQ and achievement scores, concluded that the plaintiff did not have the judgment necessary to handle his financial affairs due to his history of alcohol abuse and emotional lability.  (Tr. 522-4).  Mr. Spangler diagnosed a major depressive disorder, generalized anxiety disorder, panic disorder without agoraphobia, alcohol abuse in early remission, and nicotine dependence, and concluded that Mr. Peto would have poor or no ability in many areas of occupational, performance, and personal/social adjustment. (529-31).

Since neither of the examiners was entitled to greater weight than the other, the ALJ could reasonably have relied on Mr. Pack's report.

12

Peto

As far as the plaintiff's physical condition was concerned, the ALJ noted that although the plaintiff had been examined for right knee complaints by Dr. Ronald Dubin, and x-rays confirmed a previous lateral tibial plateau fracture from a 1987 motor vehicle accident, Mr. Peto had negative straight leg raising testing, normal reflexes and motor examination, and a full range of motion of the knee with no crepitus or ligament instability. (Tr. 577). Some numbness was present along the right little toe, but Dr. Dubin did not think that this was related to the old fracture, and recommended an MRI to determine if there was a L5-S1 disk problem. No functional restrictions were suggested. (Id.). As previously noted, the plaintiff testified that he could not afford the MRI. (Tr. 635). As noted in Gooch, supra, the Court must work with the evidence before it.

Treatment notes from the plaintiff's family physician, Dr. Ziad Sara, reflect treatment for a number of conditions including acute prostatitis (Tr. 536) , elevated liver enzymes (Tr. 535, 566), and chest pain, but the physician obtained a normal stress echocardiogram and pulmonary function testing (Tr. 539, 542). No functional restrictions were given by any source, and state agency physicians opined in February and May, 2004 that the plaintiff's physical problems were less than severe. (Tr. 459-60). Therefore, the ALJ's determination that the plaintiff had no "severe" physical impairment is supported by substantial evidence.

The plaintiff's arguments on appeal center on procedural issues. He points out that the first ALJ decision issued on September 19, 2003 contains discussions of psychiatric hospitalizations in April, 2002 (Tr. 165), July, 2002 (Tr. 192), and June,

13

Peto

2002 (Tr. 277). The current Court transcript does not clarify which exhibits were available in the prior hearing, but it does contain a psychiatric admission in March, 2003 and another admission in April, 2003 (Tr. 293, 325) which were not considered by the first ALJ and are not contained on the Exhibit List related to the January, 2002 applications (Tr. 49-51). These hospitalizations were not discussed by the ALJ in the current case, presumably because he considered matters occurring before the September 19, 2003 ALJ decision to be res judicata. The plaintiff argues that, in effect, a considerable amount of evidence relating to the plaintiff's psychiatric history and treatment was not considered by either ALJ.

However, each of these hospitalizations involved diagnoses or impressions of alcohol abuse, alcoholic intoxication, or substance-induced mood disorders, and (as has been noted by this Court) substance abuse problems cannot be a basis for awarding benefits under Public Law 104-121. The current ALJ could reasonably have determined that additional reports of Mr. Peto's substance abuse problems provided no new evidence warranting a reopening of the previous decision. Although this was not the reason cited, no useful purpose would be served by a remand, given the plaintiff's use of alcohol during the period and the fact that none of the reports attempt to distinguish substance-related issues from non-substance related issues. Nor do they provide any permanent fuctional restrictions.

In a somewhat similar vein, the plaintiff also argues that it was error for the ALJ not to consider records from Cook County, Illinois, Hospital documenting his 1987 "open reduction [and] internal fixation of right lateral tibial plateau fracture with

14

left iliac crest bone graft" (Tr. 136-47) and orthopedic records from 1994-6 containing a diagnosis of carpal tunnel syndrome, in light of the finding of no "severe" physical impairment. Once again, these records contain no evidence of permanent restrictions, and do not change the fact that Mr. Peto returned to work until approximately November 2001 (Tr. 68) until quitting in order to move to Kentucky. As the Commissioner notes, the old evidence actually tends to support the ALJ's findings. Nor does it affect the ALJ's finding that Mr. Peto had not sought any recent medical treatment for carpal tunnel syndrome and, based on Dr. Dubin's report, did not establish any of the limitations he described in lifting, or that his knee injury was causing current restrictions.

The plaintiff has also requested a remand under Sentence Six of 42 U.S.C. Section 405(g) for consideration of new evidence submitted to the Appeals Council. For a Sentence Six remand, new evidence must be both new and material, and the claimant must demonstrate good cause for her failure to submit the evidence earlier. Hollon ex rel. Hollon v. Commissioner of Social Security, 447 F.3d 477, 483 (6th Cir. 2006). The evidence consists of more treatment notes from the CCC reflecting further treatment for "alcohol abuse" and a "depressive disorder" (Tr. 600-11), including an admission by the plaintiff that he would drink "up to 12 drinks, but [on] episodic basis" (Tr. 606), office notes and testing from Dr. Sara containing further investigation of right knee and low back pain, but an MRI of the lumbosacral spine showed only a bulge with "minimal" effacement of the thecal sac and no narrowing (Tr. 617) and an MRI of the left knee, while consistent with degeneration, cartilage thinning, and

15

Peto

bursitis, showed no internal derangement (Tr. 617). Dr. Sara made a referral to an orthopedic surgeon, but did not list any functional restrictions. While some of this evidence is "new" in that it did not exist before the July 29, 2005 administrative decision, it is not "material" in that there is not "a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence." Id. at 484. A mere diagnosis of a condition says nothing about its severity.   See, e.g., Young v. Secretary of Health and Human Services, 925 F.2d 146, 151 (6th Cir. 1990). Therefore, the plaintiff's argument must fail.

The decision will be affirmed.

This the __31__ day of January, 2007.


G. WIX UNTHANK
SENIOR JUDGE